TRAIN (LOWELL NAT. BANK v.). See Case No. 8,571.

TRAIN (WESTON v.). See Case No. 17,456.

## Case No. 14,136.

### TRAINER et al. v. The SUPERIOR.

[Gilp. 514.] [1]

District Court, E. D. Pennsylvania. Nov. Term, 1834.

SEAMEN—WAGES—WHO ARE SEAMEN—MUSICIANS —ADMIRALTY JURISDICTION.

1. To justify a person employ on board a vessel in suing in the admiralty for his wages, the services rendered must contribute to the preservation of the vessel, or of those employed in her navigation.

[Cited in The D. C. Salisbury, Case No. 3,694; Packard v. The Louisa, Id. 10,652; Gurney v. Crockett, Id. 5,874; The Sultana, Id. 13,-602.]

[Cited in Holt v. Cummings, 102 Pa. St. 216.]

2. Musicians on board of a vessel, who are hired and employed as such, cannot enforce the payment of their wages by a suit in rem in the admiralty.

[Cited in Thackarey v. The Farmer of Salem, Case No. 13,852.]

This was a claim by the libellants [William Trainer and James Crawshaw] for wages, under circumstances somewhat peculiar. The vessel was originally built for a canal boat, but was now employed as a museum, for the exhibition of various articles for public amusement at the places to which she went, along the shores of the bays and rivers in the United States. The libellants were shipped at Philadelphia, on the 15th December, 1833, at twenty-five dollars a month, as musicians to play for the attraction and amusement of the audience or spectators, who should attend the exhibition, which was made on board of the boat at the wharf or shore of the places where they stopped. The contract of the libellants was, that they were to receive their pay for their "performances as musicians on board the canal museum boat." This boat or floating museum left Philadelphia soon after the libellants were shipped, passed down the Delaware, went through the canal to the Chesapeake, to Chesapeake village, Elkton, Annapolis, thence to Norfolk, and thence to various places in North Carolina; making exhibitions, and remaining at each place as long as any advantage

[1] [Reported by Henry D. Gilpin, Esq.]

was found in doing so. The boat was navigated, sometimes by the use of sails, sometimes by her oars, and through the canals she was drawn by horses. The libellants proved that they occasionally assisted in rowing the boat, with other services on board of her, in passing from place to place, and they claimed their wages generally as mariners. The question was, in order to give jurisdiction to the court, whether this was a maritime contract; whether the services rendered by the libellants were maritime.

For the libellants it was alleged that their labour was necessary for the navigation of the boat; that their services as musicians were required only at the stopping places; that, in the mean time, they rendered all the services of mariners; that there were not hands enough on board to carry the boat from place to place without their assistance; that the boat had sails and two masts; that they assisted in rowing and in attending the sails under and by the orders of the master of the boat; that there was but one man on board, and a boy except the musicians; and that a woman was there as cook.

On the other hand, proof was given that the libellants were hired as musicians; that their contract was for that service, and no other; that when the contract was made with one of them, it was mentioned that the musicians, generally, would sometimes assist in working on board, and he said he should have no objection. The master was to navigate the boat, and had one man to assist him, and afterwards added a man for that service. On former voyages, the boat had been managed with this force, on the Chesapeake Bay, when blowing hard. It was admitted that the musicians worked sometimes, but it was as they pleased, and no right was claimed of them for such services. When tired they stopped at their own pleasure, and went below to read. They frequently refused to work when requested. They always denied any right to call upon them to work, and appealed to their written contract, which was "for their performances as musicians on board the canal museum boat." Once, when it was blowing hard in the bay, they were asked to come up and assist, but refused, saying that they were sea sick.

The case was argued by Grinnell, for libellants, but the court stopped the counsel for the respondent.

HOPKINSON, District Judge. It is incumbent on the libellants to show that this was a maritime contract, or that the services performed by them were maritime. The courts, from the convenience of the jurisdiction in such cases, have gone a great way in considering services on board of a vessel to be maritime, although, strictly speaking, the persons were not mariners, nor employed in the navigation of the vessel. Their cooks, carpenters, stewards, and even surgeons have been allowed to sue in the admiralty as mariners, or as persons rendering maritime services under a maritime contract. The broadest principle, however, that has yet been recognized is, that the services rendered must be necessary, or, at least, contribute to the preservation of the vessel, or of those whose labour and skill are employed to navigate her. Thus a carpenter is required for the preservation and repair of the ship, in case of accident; the cook and steward to feed the crew; the surgeon to attend to their health and minister to the sick. This, certainly, is opening a ground sufficiently extensive for every case that, with any reason or under any pretence, can be considered as a case of maritime service. But to obtain a jurisdiction over the claim of these libellants, we must go much beyond that limit. The contract was expressly for services having nothing to do with the navigation or preservation of the boat or her crew, and, in truth, were required only at times when the boat was at rest, and employed as a place for the exhibition of curiosities. They did sometimes work, but at their own will and pleasure. They took up an oar when tired of the fiddle bow, and handled a sail as a change from their music books.

The libel must be dismissed, and, if wages are due to the libellants, they may be recovered in another place.

Decree. That the libel be dismissed with costs.